# ESTADO LIBRE ASOCIADO DE PUERTO RICO
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE SAN JUAN**

| | |
|---|---|
| **SUCESION DE JAIME E. RIVERO OTERO REPRESENTADA POR SU EJECUTORA, YOLANDA RIVERO MARIN, Y SUCESION DE AIDA MARTINEZ DE RIVERO, REPRESENTADA POR SU EJECUTOR ENRIQUE MARTINEZ,** **Demandantes** **vs.** **HERBERT J. SIMS & CO, INC.** **Demandado** | CIVIL NÚM.: SOBRE: Daños y Perjuicios, Incumplimiento Contractual |

## DEMANDA

**Al HONORABLE TRIBUNAL:**

**COMPARECE la parte demandante** por conducto de su representación legal que suscribe y muy respetuosamente **EXPONE, ALEGA Y SOLICITA**:

### I. LAS PARTES

1. La parte demandante está compuesta por la Sucesión de Jaime E. Rivero Otero representada por su ejecutora Yolanda Rivero Marín y por la Sucesión de Aida Martínez De Rivero representada por su ejecutor Enrique Martínez, (en lo sucesivo, "Sucesión Rivero" y "Sucesión Martínez")

2. El Sr. Jaime E. Rivero Otero mantuvo su cartera de inversiones con Banco Bilbao Argentaria que luego fue adquirida por Oriental Financial Services con el Asesor Financiero, Sr. Rubén C. Fernández. Debido a la relación personal que tenían los demandantes con el Sr. Fernández, cuando este se trasladó para la firma de inversiones HJ Sims, el Sr. Rivero a solicitud del Sr. Fernández permitió que se llevara la cartera de inversiones con él a su nueva casa de inversiones. Las cuentas de inversión objeto de esta demanda son xxx-xx1230 y xxx-xx1932.

3. La parte demandada Herbert J. Sims & Co, Inc. ("HJ Sims"), es una Casa de Corretaje registrada con la Oficina del Comisionado de Instituciones Financieras ("OCIF") y firma asesora de inversiones con oficinas principales en 1 Calle 1 PH 400-A Metro Office Park,

1

Guaynabo, 00968, autorizada como tal por el "Securities and Exchange Commission", CRD# 3420, SEC# 8-33115.

4. En todo momento, las cuentas de los Demandantes en HJ Sims fueron administradas por la parte Demandada a través de su Asesor Financiero Rubén C. Fernández (CRD# 1439847).

5. Este Tribunal tiene jurisdicción para entender este asunto en consideración a que las partes Demandantes residían en Puerto Rico en todo momento alegado en esta demanda al igual que los servicios rendidos por HJ Sims fueron en Puerto Rico.

## II. TRASFONDO

7. El fallecido, Jaime E. Rivero Otero, también conocido como Jaime Enrique Rivero Otero (en adelante, "Sr. Rivero") tenía noventa y cinco (95) años cuando falleció, el 21 de diciembre de 2015. El Sr. Rivero Estaba casado con Aida Martínez de Rivero, también conocida como Aida Martínez Vázquez y como Aida M. Rivero (en lo sucesivo, "Sra. Martínez"). La Sra. Martínez falleció en noviembre 2019, luego de estar encamada por los últimos 10 años, y su sucesión es representada por el Sr. Enrique Martínez.

8. El Sr. Rivero encomendó su patrimonio al Demandado para la planificación, administración e inversión financiera.

9. En el 2012, Oriental Bank, adquiere al BBVA, transacción que tomó cerca de un año para completarse. A finales de julio y principios de agosto de 2013, el asesor financiero, Rubén Fernández, le fue negada la entrada a Oriental lo cual provocó que buscara otro sitio para ejercer su trabajo de asesor financiero. Acto seguido, el Sr. Fernández invitó a los demandantes que se transfirieran con él y movieran su portafolio a la casa de corretaje Herbert J Sims, parte demandada, dado que este habría de empezar a trabajar en dicho lugar.

10. El Sr. Rivero confió a HJ Sims sus activos líquidos para administración e inversión, y especificó que se invirtieran de manera conservadora, de manera que no se pudiese perder el capital, esperando que HJ Sims los invirtiera sabiamente de manera segura y conservadora con el objetivo financiero de preservación del capital y un rendimiento de renta fija manteniendo todo el tiempo una cantidad liquida por emergencias. El rendimiento de la renta fija era utilizado para sufragar los gastos médicos de la Sra. Martínez, quien estuvo encamada por varios años. Por su falta de conocimiento sobre inversiones, y por la confianza y naturaleza fiduciaria de la relación

2

que tenía con HJ Sims, el Sr. Rivero y la Sra. Martínez siempre confiaron plenamente en sus recomendaciones y decisiones explícitas para el manejo de estos dineros e inversiones.

11. Como resultado del engaño y la culpa de la Parte Demandada (HJ Sims) alegados en detalle en esta Demanda, en ocasiones relevantes en el presente, y siguiendo las recomendaciones e instrucciones explícitas de HJ Sims, la cartera de inversiones del Sr. y Sra. Rivero carecían de una asignación de activos adecuada, o sea diversificación, y estaba sobre concentrada en valores de PR y siguiendo una estrategia de inversión de invertir en valores de Puerto Rico y mantenerlos mismos o sea una estrategia de "buy and hold". Como consecuencia de ello, y por culpa de HJ Sims, los Demandantes han sufrido pérdidas de alrededor **$1,400,000**.

12. Los Demandantes alegan violaciones del Reglamento 6078 de la Ley Uniforme de Valores de Puerto Rico ("PRUSA") que impone que el demandado "debe observar el más alto estándar de deber fiduciario hacia sus clientes e inversionistas"; FR 2010 que impone que HJ SIMS, observará altos estándares de honor comercial y principios justos y equitativos de comercio; FR 2111[1], regla de "adecuación", y su regla corolaria FR 2090, "regla de conocer a su cliente"; FR 3110 que impone al demandado el deber de supervisión de establecer y mantener un sistema para supervisar que esté razonablemente diseñado para lograr el cumplimiento de las leyes y regulaciones de valores aplicables y las Reglas FINRA; FR 3120 que impone al demandado un deber de supervisión para establecer, mantener y hacer cumplir un sistema de políticas y procedimientos de control de supervisión que pruebe y verifique que los procedimientos de supervisión del miembro estén razonablemente diseñados para lograr el cumplimiento de las leyes y regulaciones de valores aplicables y las Reglas FINRA; las pautas de FINRA y los estándares de la industria con respecto a los deberes fiduciarios, tratos justos, deberes de cuidado y franqueza, concentración y asignación de activos; las leyes de Puerto Rico por dolo, declaraciones falsas y omisión de hechos materiales, culpa y negligencia en la contravención y en el cumplimiento de las obligaciones contractuales; y las disposiciones antifraude de la Ley de Bolsa de Valores de Puerto Rico, todo enmarcan el incumplimiento del demandado, que es la causa de inmensa pérdida económica de los demandantes.

---

[1] La regla de idoneidad de FINRA (2111), que entró en vigencia en julio de 2012, establece:
"(a) Un miembro o una persona asociada debe tener una base razonable para creer que una transacción o estrategia de inversión recomendada que involucre un valor o valores es adecuada para el cliente, con base en la información obtenida a través de la diligencia razonable del miembro o persona asociada para conocer el perfil inversor del cliente. El perfil de inversión de un cliente incluye, entre otros, la edad del cliente, otras inversiones, situación y necesidades financieras, estado fiscal, objetivos de inversión, experiencia de inversión, horizonte temporal de inversión, necesidades de liquidez, tolerancia al riesgo y cualquier otra información que el cliente pueda tener. divulgar al miembro o persona asociada en relación con dicha recomendación."

3

13. El demandado HJ SIMS incumplió su deber fiduciario con los demandantes en virtud de la Ley de Puerto Rico al anteponer su interés económico a los del Sr. Rivero y Sra. Martínez, a su riesgo y cargo, lo que provocó que sufrieran pérdidas sustanciales en sus inversiones de capital.

14. El demandado HJ SIMS violó la confianza que le depositaron los demandantes y cometió dolo grave al participar en un curso de esquemas engañosos, negligencia crasa, especulación, tergiversaciones de hechos materiales y omisiones de hechos materiales, incluidas, entre otras, recomendaciones inadecuadas, ventas y compras desautorizadas y concentraciones no diversificadas. en valores de PR sin permiso, ni comunicar los riesgos sustanciales asociados con las inversiones, y la tergiversación expresa de la seguridad y los riesgos involucrados. El demandado HJ SIMS además violó la confianza al no supervisar ni controlar a sus representantes registrados, al violar la Ley Uniforme de Valores de Puerto Rico, al no reparar las lesiones y pérdidas en las que incurrieron los demandantes, y por otra conducta según se alega en el presente. Las tergiversaciones y omisiones del demandado causaron las pérdidas que sufrieron el Sr. Rivero y la Sra. Martínez.

15. Las inversiones y estrategias llevadas a cabo unilateralmente en desconocimiento sin autorización, realizadas por el demandado no eran adecuadas para el Sr. Rivero y la Sra. Martínez en función de su perfil de inversionista, sus objetivos, necesidades de ingresos, preocupaciones sobre el riesgo, metas, ingresos y necesidades. En el momento en que HJ SIMS hizo sus transacciones a través de su asesor financiero ("FA"), sabía o creía razonablemente que la estrategia de seguridad o inversión no era adecuada, o hizo la recomendación y la inversión sin tener en cuenta si la estrategia de seguridad o inversión era adecuada o no para los demandantes.

16. La conducta ilícita del Demandado HJ SIMS constituyó dolo en la contratación y fue una violación de las reglas que tenían que seguir como se comprometieron a hacer en su contrato de entre otras cosas las reglas las Reglas de FINRA y de valores de Puerto Rico, de la Municipal Securities Regulations Board ("MSRB") y del Securities Exchange Commission ("SEC") y Regulation Best Interest ("Reg BI"). Además, las recomendaciones inadecuadas del Demandado HJ SIMS y las violaciones de las Reglas FINRA forman la base de los reclamos de negligencia, incumplimiento del deber fiduciario e incumplimiento del contrato y acuerdo de trabajo con los Demandantes.

4

17. En todo momento, el demandado HJ SIMS actuó en calidad de agente y custodio fiduciario del Demandante. Esta relación fiduciaria surgió de los demandados que se presentaban como corredores de valores registrados y aceptaban una compensación por sus servicios, el conocimiento y la experiencia superiores del demandado con respecto a los valores y las representaciones hechas por HJ SIMS al Sr. Rivero y a la Sra. Martínez con respecto a las inversiones.

18. Actuando en estas capacidades, HJ SIMS le debía a los demandantes los deberes fiduciarios de buena fe, trato justo, cuidado, confianza e integridad en su trato y en sus recomendaciones de inversiones, de hecho, HJ Sims está llamado a actuar en el mejor interés de su cliente por encima de su propio mejor interés. El demandado HJ SIMS también estaba obligado a cumplir con los deberes requeridos por las Reglas FINRA, específicamente las reglas con respecto a la idoneidad, el conocimiento del cliente, los principios comerciales justos y equitativos y la supervisión. Dichos deberes fueron incumplidos por el Demandado por sus acciones e inacciones como se establece en este documento.

19. El demandado HJ SIMS le debía a los demandantes el deber de actuar razonablemente con respecto a sus tratos y sus recomendaciones de inversiones, incluidos, entre otros, los deberes de descubrir hechos relevantes sobre su cliente para determinaciones de idoneidad, revelar riesgos sobre las inversiones y acciones recomendadas, no tergiversar las inversiones, hacer la diligencia debida adecuada sobre los productos recomendados, recomendar solo inversiones adecuadas y adecuadamente diversificadas, no recomendar la compra de inversiones especulativas de alto riesgo, observar altos estándares de honor comercial y principios de comercio justos y equitativos, y para proporcionar supervisión con respecto a las inversiones y preocupaciones de los Demandantes. Además, el demandado HJ SIMS le debía al Sr. Rivero y a la Sra. Martínez el deber de supervisar adecuadamente a sus representantes registrados y sus interacciones con ellos.

20. El demandado HJ SIMS era miembro de FINRA en el momento de las interacciones anteriores con los demandantes. Como tal, HJ SIMS estaba sujeto a las normas y reglamentos de FINRA. Como cliente de HJ SIMS, el Sr. Rivero y la Sra. Martínez eran terceros beneficiarios de los contratos y acuerdos de HJ SIMS con FINRA, incluidas las reglas de FINRA. Además, HJ SIMS tenía un contrato expreso e implícito con los demandantes que lo obligaba a cumplir con las

5

Reglas de FINRA y las regulaciones de Puerto Rico (como el deber fiduciario), como parte de sus nuevos formularios de cuenta y proceso de apertura de cuenta.

21. HJ SIMS incurrió en una sobre concentración inadecuada en la cuenta en valores de los demandantes. Además, incurrió en tergiversaciones y omisiones sobre dichos valores, omisiones de riesgo, conflictos de intereses, falta de supervisión y falta de observación de altos estándares de honor comercial y principios justos y equitativos de comercio, violando las Reglas de FINRA.

22. Además de la responsabilidad del Demandado por las acciones ilícitas alegadas en el presente, como firma de corretaje de los demandantes y empleador de su representante registrado involucrado, HJ SIMS también es responsable de todos los daños establecidos en el presente en la misma medida en que su representante registrado sería responsable. Esta responsabilidad proviene de varias fuentes. El demandado HJ SIMS es responsable por no haber supervisado a sus representantes registrados y, según el derecho consuetudinario y de Puerto Rico, un empleador/principal es responsable por la negligencia, el engaño y los daños de su agente, y es responsable según la doctrina de "respondent superior" y responsabilidad vicaria. El demandado HJ SIMS también es responsable del daño cometido por su agente si el agente actúa dentro de su autoridad.

23. El demandado HJ SIMS también es indirectamente responsable por la conducta de sus respectivos asesores financieros, agentes y empleados identificados en el presente porque su conducta cae dentro del alcance de su empleo o agencia, además de un deseo de servir y beneficiar a los empleadores o intereses de los directores del demandado, y resultó en un beneficio económico para ellos. *Vernet v. Serrano-Torres*, 566 F.3d 254, 261 (1er Cir. P.R. 2009).

24. El Demandado HJ SIMS también es responsable como persona de control de su Asesor Financiero bajo la Ley de Valores de Puerto Rico y bajo las leyes federales de valores, Sección 20(a) de la Ley del Mercado de Valores.

25. El demandado HJ SIMS violó la Regla 3010[2] de FINRA y otras Reglas de FINRA al no supervisar adecuadamente a sus Asesores financieros, al no cumplir con las Reglas de FINRA tal como se establece en esta demanda.

---

[2] La Regla 3010(a) de FINRA establece que cada miembro deberá:
"establecer y mantener un sistema para supervisar las actividades de cada representante registrado y persona asociada que esté razonablemente diseñado para lograr el cumplimiento de las leyes y reglamentos de valores aplicables, y con las Reglas de esta Asociación. La responsabilidad final de la supervisión adecuada recaerá en el miembro".

6

26. Como se alegó anteriormente, el Demandado HJ SIMS participó directa o indirectamente en actos y prácticas de dolo para engañar, e inducir al Sr. Rivero y a la Sra. Martínez a celebrar contratos para comprar los CEF y los Bonos PR. Véase, 31 L.P.R.A. § 3404[3]. El dolo fue grave y da lugar a la nulidad de estos contratos porque sin él el actor no hubiera comprado los valores de PR. Véase, 31 L.P.R.A. § 3408[4].

27. Debido a que los demandantes no tuvieron nada que ver con la contraprestación ilícita, reclaman aquí el dinero y honorarios que pagaron a HJ SIMS por la compra de los CEF y los Bonos PR, independientemente de cualquier otra compensación que pudieran recibir en este caso.

28. Como se establece en la presente demanda, los Demandantes y el Demandado celebraron un acuerdo contractual para abrir y mantener cuentas de valores en HJ SIMS, para comprar y vender valores en esas cuentas, y para que HJ SIMS brinde asesoramiento sobre esas cuentas como fiduciarios. El "Acuerdo de relación con el cliente" requería específicamente que HJ SIMS hiciera recomendaciones "adecuadas" y cumpliera con las reglas, regulaciones y costumbres y usos de la bolsa o mercado en el que se ejecutan las transacciones de valores.

29. El demandado HJ SIMS está obligado contractualmente a seguir las reglas de FINRA. Por lo tanto, las Reglas de FINRA regían al demandado y al mercado, y una violación de esas Reglas por parte de HJ SIMS constituye un incumplimiento del contrato con el Sr. Rivero y la Sra. Martínez.

30. Además, de conformidad con los reglamentos de Puerto Rico que rigen a HJ SIMS cuando ejerce funciones en Puerto Rico, HJ SIMS y sus agentes estaban obligados a actuar como fiduciarios con respecto a sus clientes, como los demandantes. "Artículo 25 del Reglamento de la Ley Uniforme de Valores."

31. Estas acciones por incumplimiento de contrato están sujetas a un plazo de prescripción de 15 años conforme a 31 L.P.R.A. §5294 ("los que son personales y para los cuales no se fija término especial de prescripción, después de quince (15) años") Ver Colon v. Blades, 914 F. Supp.2d 181 (D. Puerto Rico 2011) ("Sin embargo, el artículo 1802 y su plazo de prescripción de un año no rigen las acciones por incumplimiento de una obligación ya existente.

---

[3] "El consentimiento dado por… engaño será nulo".

[4] "Hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes se induce al otro a celebrar un contrato que sin ellas no hubiera hecho."

7

Tales acciones están sujetas al estatuto general de prescripción de quince años. La ley de Puerto Rico ha reconocido tal prescripción. obligaciones existentes en, entre otras, acciones contra un agente por ganancias obtenidas en incumplimiento del deber fiduciario...").

32. En consecuencia, el incumplimiento de HJ SIMS de su contrato y las Reglas FINRA (y la negligencia asociada y el incumplimiento del deber fiduciario) están sujetos a un estatuto de limitación de 15 años.

### III. HECHOS Y ALEGACIONES

**A. PRIMERA CAUSA DE ACCIÓN: LOS VALORES Y LA ESTRATEGIA RECOMENDADOS NO ERAN ADECUADOS PARA LOS DEMANDANTES**

32. Las alegaciones contenidas en los párrafos 1 a 32 se vuelven a alegar y se incorporan al presente.

33. La regla de idoneidad de FINRA (2111), que entró en vigencia en julio de 2012, establece:

> ""(a) Un miembro o una persona asociada debe tener una base razonable para creer que una transacción o estrategia de inversión recomendada que involucre un valor o valores es adecuada para el cliente, con base en la información obtenida a través de la diligencia razonable del miembro o persona asociada para conocer el perfil inversor del cliente. El perfil de inversión de un cliente incluye, entre otros, la edad del cliente, otras inversiones, situación y necesidades financieras, estado fiscal, objetivos de inversión, experiencia de inversión, horizonte temporal de inversión, necesidades de liquidez, tolerancia al riesgo y cualquier otra información que el cliente pueda tener. divulgar al miembro o persona asociada en relación con dicha recomendación."

34. Aunque no fue el caso aquí, la Comisión de Bolsa y Valores de EE. UU. descubrió que incluso si el objetivo de un inversionista es multiplicar rápidamente su dinero, el corredor aún está obligado a recomendar operaciones adecuadas a la "situación" del inversionista. En una apelación de una acción disciplinaria de NASD, la SEC declaró:

> "Pinchas [corredor] argumentó ante la NASD que Wang [cliente] insistió en que su inversión se multiplicara rápidamente para poder comprar una casa. Wang negó la afirmación de Pinchas. Sin embargo, incluso si Wang hubiera deseado que Pinchas duplicara su dinero, ese deseo no habría relevado a Pinchas de su deber de recomendar solo aquellas operaciones adecuadas a su situación".

In Re-Rafael Pinchas, S.E.C. Rel No. 41816, Admin. Proc. File No. 3-9639 (Sept. 1, 1999) (énfasis agregado). Ver también In Re-Larry Loungani, S.E.C. Rel. No. 34-37835, Admin. Proc. File No. 3-8761 (Oct. 17, 1996) (""Un representante puede hacer 'solo las recomendaciones que sean consistentes con la situación financiera y las necesidades [de su cliente].")

8

35. Como se alegó anteriormente, la recomendación de concentrar en exceso los fondos del Sr. Rivero y la Sra. Martínez en valores de Puerto Rico fue drásticamente inadecuada para los Demandantes. Las inversiones no eran adecuadas en función de sus objetivos, necesidades de ingresos, preocupaciones sobre el riesgo, capacidad para aceptar riesgos, metas, ingresos y necesidades. El Demandado tampoco recomendó una diversificación adecuada de los fondos de inversión.

36. En el momento en que HJ Sims hizo sus recomendaciones a través de sus asesores financieros, sabía o creía razonablemente que la estrategia de seguridad o inversión no era adecuada o hizo la recomendación y la inversión con un desprecio imprudente de si la estrategia de inversión era adecuada o no para los Demandantes.

37. La conducta negligente del Demandado HJ Sims como se alega en el presente constituyó dolo en la contratación y fue una violación de la Ley Uniforme de Valores de Puerto Rico. Además, como se establece a continuación, las recomendaciones inadecuadas y las infracciones de las normas FINRA del Demandado HJ Sims forman la base de los reclamos de negligencia, incumplimiento del deber fiduciario e incumplimiento del contrato de los Demandantes.

**B. SEGUNDA CAUSA DE ACCIÓN: INCUMPLIMIENTO DEL DEBER FIDUCIARIO**

38. Las alegaciones contenidas en los parrados 1 a 37 se vuelven a alegar y se incorporan aquí.

39. La norma fiduciaria que aplica en Puerto Rico según el Reg. 6078 es el estándar fiduciario más alto. El Estándar Fiduciario más alto es el de la Ley de Fideicomiso. De la Corte Suprema de EE. UU. en un caso ERISA; *Tibble v. Edison Int'l*, 575 U.S. ___ (18 de mayo de 2015):

> "La Re-expresión (Tercera) de los Fideicomisos establece lo siguiente: "[A] los deberes del fideicomisario se aplican no solo en la realización de inversiones sino también en el seguimiento y la revisión de las inversiones, lo que debe hacerse de manera razonable y apropiada para las inversiones, cursos particulares de acción y las estrategias involucradas". §90, Comentario b, p. 295 (2007). La Ley Uniforme de Inversores Prudentes confirma que "[la] gestión abarca el control" y que un fideicomisario tiene "la responsabilidad continua de supervisar la idoneidad de las inversiones ya realizadas." §2, Comentario, 7B U. L. A. 21 (1995) (comillas internas omitidas). Scott en Trusts da a entender lo mismo al afirmar que, "[c]uando el patrimonio del fideicomiso incluye activos que son inapropiados como inversiones del fideicomiso, el fideicomisario normalmente tiene el deber de disponer de ellos dentro de un tiempo razonable". A. Scott, W. Fratcher, & M. Ascher, Scott y Ascher en Trusts §19.3.1, p. 1439 (5th ed. 2007). Bogert dice lo

9

mismo. Bogert 3d §685, at 156-157 (explicando que si se determina que una inversión es imprudente, el fideicomisario "debe disponer de ella dentro de un tiempo razonable "); ver, e.g., *State Street Trust Co. v. DeKalb*, 259 Mass. 578, 583, 157 N. E. 334, 336 (1927) (se requirió que el fideicomisario tomara medidas para "proteger los derechos de los beneficiarios" cuando el valor de los activos del fideicomiso disminuyó)."

40. El deber fiduciario de un corredor y asesor financiero con respecto a su cliente también está contenido en el Reglamento de la Ley de Valores de Puerto Rico. Específicamente, el Artículo 25 de la Ley Uniforme de Valores establece:

> "**ARTICULO 25**: Prácticas deshonestas y poco éticas en el negocio de valores. Sección 25.1: Estándar de negocios y deberes fiduciarios hacia los clientes. Todo corredor de bolsa, emisor, asesor de inversiones, representante de asesor de inversiones, asesor cubierto federal, representante de asesor de inversiones de un asesor cubierto federal, agente o cualquier otra persona sujeta a las disposiciones de la Ley, debe observar el más alto nivel de deber fiduciario hacia sus clientes e inversores."

41. Tal como lo establece la Corte de Apelaciones del 11° Circuito: "[l]a ley es clara en cuanto a que un corredor tiene un deber fiduciario de cuidado y lealtad hacia un inversionista de valores." <u>Gochnauer v. A.G. Edwards & Sons, Inc.</u>, 810 F.2d 1042, 1049 (11th Cir. 1987).

42. Un corredor de bolsa es "un agente que debe a su principal el deber de actuar solo como autorizado." <u>Merrill Lynch v. Cheng</u>, 901 F.2d 1124, 1128 (D.C. Cir. 1990). "Como agente, tiene el deber de negociar en interés del mandante… Además, tiene el deber de dar a su mandante información que sea relevante para los asuntos que se le encomienden y de los que tenga conocimiento." <u>Id.</u> Las responsabilidades fiduciaries de un corredor hacia su cliente se establecen más específicamente de la siguiente manera:

> "(1) el deber de recomendar una acción solo después de estudiarla lo suficiente como para estar informado sobre su naturaleza, precio y pronóstico financiero; (2) el deber de llevar a cabo los pedidos del cliente con prontitud de la manera más adecuada para servir a los intereses del cliente; (3) el deber de informar al cliente de los riesgos involucrados en la compra o venta de un valor en particular; (4) el deber de abstenerse de negociar por cuenta propia o negarse a revelar cualquier interés personal que el corredor pueda tener en un valor recomendado en particular; (5) el deber de no tergiversar ningún hecho material de la transacción; y (6) el deber de realizar transacciones comerciales solo después de recibir la autorización previa del cliente."

<u>Lieb v. Merrill Lynch, Pierce, Fenner and Smith</u>, 461 F.Supp. 951, 953 (E.D.Mich. 1978) (citas omitidas), estos deberes se incumplieron como se establece anteriormente, incluidos, entre otros, el deber de cuidado del demandado, el deber de revelar los riesgos involucrados en la inversión recomendada, el deber de discutir con sinceridad las inversiones, el deber de abstenerse

10

de negociar por cuenta propia y revelar conflictos de interés, el deber de diligencia debida en la inversión y el deber de no tergiversar u omitir hechos materiales.

43. En todo momento en el presente, el Demandado HJ Sims actuó en calidad de agente y custodio fiduciario de los Demandantes. Esta relación fiduciaria surgió del hecho de que el Demandado se presentó como un corredor de valores registrado y aceptó una compensación por sus servicios, el conocimiento y la experiencia superiores del demandado con respecto a los valores y las representaciones hechas por HJ Sims al Sr. Rivero con respecto a las inversiones. Actuando en estas capacidades, HJ Sims le debía a los Demandantes los deberes fiduciarios de buena fe, trato justo, cuidado, confianza e integridad en su trato con ellos y en sus recomendaciones de inversiones. El Demandado HJ Sims también estaba obligado a cumplir con los deberes requeridos por las Reglas FINRA, específicamente las reglas con respecto a la idoneidad, el conocimiento del cliente, los principios comerciales justos y equitativos y la supervisión. Dichos deberes fueron incumplidos por el Demandado por sus acciones e inacciones como se establece en este documento.

C. TERCERA CAUSA DE ACCIÓN: NEGLIGENCIA Y SUPERVISIÓN NEGLIGENTE

44. Las alegaciones contenidas en los párrafos 1 a 43 se vuelven a alegar e incorporan aquí.

45. Se aplica un estándar de negligencia a los vendedores de valores registrados. Según lo establecido en Merrill Lynch, Pierce, Fenner & Smith v. Cheng, 697 F.Supp. 1224, 1227 (D.D.C. 1988): "De la jurisprudencia se desprende claramente que un corredor de bolsa puede ser considerado responsable ante su cliente por negligencia." El tribunal de Cheng continuó afirmando que, aunque no encontró un derecho de acción privado basado en las reglas de NASD, una violación de las reglas de NASD sería un "factor a considerar por el jurado en cuanto a si [el corredor] actuó como persona razonable en su conducta..." Id. El NASD ahora se conoce como FINRA.

46. El Demandado HJ Sims le debía a los Demandantes el deber de actuar razonablemente con respecto a sus tratos y sus recomendaciones de inversiones, incluidos, entre otros, los deberes de descubrir hechos relevantes sobre su cliente para determinaciones de idoneidad, revelar riesgos sobre las inversiones y acciones recomendadas, para no tergiversar las inversiones, hacer la diligencia debida adecuada sobre los productos recomendados, recomendar solo inversiones adecuadas y adecuadamente diversificadas, no recomendar la compra de

11

inversiones especulativas de alto riesgo, observar altos estándares de honor comercial y principios comerciales justos y equitativos, y para proporcionar supervisión con respecto a las inversiones y preocupaciones de los Demandantes. Además, el Demandado HJ Sims les debía a los Demandantes el deber de supervisar adecuadamente a sus representantes registrados y sus interacciones con ellos.

47. El Demandado HJ Sims incumplió negligentemente esos deberes a través de sus actos negligentes, así como a través de su omisión de actuar como se establece en este documento.

**D. CUARTA CAUSA DE ACCIÓN: INCUMPLIMIENTO DE CONTRATO**

48. Las alegaciones contenidas en los párrafos 1 a 47 se vuelven a alegar e incorporan aquí.

49. El Demandado HJ Sims era miembro de FINRA en el momento de las interacciones anteriores con los Demandantes. Como tal, HJ Sims estaba sujeto a las reglas y regulaciones de FINRA. Como cliente de HJ Sims, los Demandantes eran terceros beneficiarios de los contratos y acuerdos de HJ Sims con FINRA, incluidas las Reglas de FINRA. Además, HJ Sims tenía un contrato expreso e implícito con los Demandantes que lo obligaba a cumplir con las Reglas de FINRA y las regulaciones de Puerto Rico (como el deber fiduciario), como parte de sus nuevos formularios de cuenta y proceso de apertura de cuenta. La sobre concentración inadecuada de la cuenta de los Demandantes en valores de Puerto Rico, tergiversaciones y omisiones sobre dichos valores, omisiones de riesgo, conflictos de intereses, falta de supervisión y falta de observación de altos estándares de honor comercial y principios justos y equitativos de comercio violaron las reglas de FINRA, algunos de los cuales se citan anteriormente.

50. El concepto de buena fe, los usos y estándares de la industria [como las Reglas FINRA] y las disposiciones de la ley de valores se "incorporan por referencia en el contrato." Noble v. Corporación Insular de Seguros, 738 F.2d 51, 53 (1st Cir. P.R. 1984); ver también E.L.A. v. Great American Insurance Co., 106 D.P.R. 825, 829 (1977) (cuando las partes celebran acuerdos sobre materias reguladas por ley, las disposiciones legales se incorporan implícitamente al contrato). "La ley puertorriqueña impone a las partes contratantes el deber de cumplimiento de buena fe". Adria Int'l Group, Inc. v. Ferre Dev., Inc., 241 F.3d 103, 108 (1er Cir. 2001).16 "Los que en el cumplimiento de sus obligaciones incurren en dolo, negligencia o mora, y los que en cualquier forma contravinieren lo dispuesto en las mismas, estarán sujetos a indemnización por los daños y perjuicios que por ello causen." 31 L.P.R.A. § 3018.

12

51. Por sus acciones e inacciones antes mencionadas, el Demandado HJ Sims violó las reglas de FINRA, incumplió sus deberes fiduciarios e incumplió su contrato expreso e implícito con FINRA y los Demandantes, y como resultado directo y próximo, causó daños a el Sr. Rivero y a la Sra. Martínez como se alega en este documento.

### E. QUINTA CAUSA DE ACCION: RESPONSABILIDAD SUBSIDIARIA DEL DEMANDADO POR LAS ACCIONES DE SUS REPRESENTANTES

52. Las alegaciones contenidas en los párrafos 1 a 51 se vuelven a alegar e incorporan aquí.

53. Además de la responsabilidad del Demandado por las acciones e inacciones ilícitas alegadas en el presente, como empresa de corretaje de los Demandantes y empleador de su representante registrado involucrado, HJ Sims también es responsable de todos los daños establecidos en el presente en la misma medida en que su representante registrado sería responsable. Esta responsabilidad proviene de varias fuentes. El Demandado HJ Sims es responsable por no haber supervisado a sus representantes registrados y, según el derecho consuetudinario y de Puerto Rico, un empleador/principal es responsable por la negligencia, el engaño y los daños de su agente, y es responsable según la doctrina de respondent superior. El Demandado HJ Sims también es responsable de las actuaciones de su agente si el agente se encuentra en posición de cometer dolo, mientras aparentemente actúa dentro de su autoridad.

54. El Demandado HJ Sims también es indirectamente responsable por la conducta de sus respectivos asesores financieros, agentes y empleados identificados en el presente porque su conducta cae dentro del alcance de su empleo o agencia, promovió un deseo de servir y beneficiar a los empleadores del demandado o los intereses de los directores, y resultó en un beneficio económico para ellos. Vernet v. Serrano-Torres, 566 F.3d 254, 261 (1st Cir. P.R. 2009).

55. El Demandado HJ Sims también es responsable como persona de control de su Asesor Financiero bajo la Ley de Valores de Puerto Rico.

56. La Regla 3010(a) de FINRA establece que cada miembro deberá:

> "establecer y mantener un sistema para supervisar las actividades de cada representante registrado y persona asociada que esté razonablemente diseñado para lograr el cumplimiento de las leyes y reglamentos de valores aplicables, y de las Reglas de esta Asociación. **La responsabilidad final de la supervisión adecuada recaerá en el miembro**." *(Énfasis añadido)*

57. El Demandado HJ Sims violó la regla 3010 de FINRA y otras reglas de FINRA al no supervisar adecuadamente a sus asesores financieros, al supervisar negligentemente a los

13

asesores financieros y al no cumplir con las reglas de FINRA tal como se establece en este documento.

F.     **SEXTA CAUSA DE ACCION: RESCISIÓN DE CONTRATOS**

**Nulidad de los Contratos de Compra y Préstamo y rescisión del contrato**

58. Las alegaciones contenidas en los párrafos 1 a 57 se vuelven a alegar e incorporan aquí.

59. "La ley de contratos de Puerto Rico establece que '[c]onsentimiento dado por . . . el engaño será nulo.' P.R. Laws Ann. teta. 31, § 3404. "Hay dolo cuando por palabras o maquinaciones insidiosas de parte de uno de los contratantes se induce al otro a celebrar un contrato que sin ellas no hubiera hecho".'" *Id.* § 3408. *Berganzo-Colon v. Ambush*, 704 F.3d 33, 37 (1st Cir. P.R. 2013).

60. Las pautas de FINRA también reconocen expresamente la Rescisión como un remedio adecuado. De conformidad con las pautas de FINRA, "[r]escisión está diseñada para colocar al reclamante en la misma posición que ocupaba antes de la transacción ilícita. Podrá incluir la devolución de los valores de que se trate." Guía del árbitro, pág. 63.

61. Como se alegó anteriormente, el Demandado HJ Sims directa o indirectamente participó en actos y prácticas fraudulentas para engañar, como engañó, e inducir a los Rivero a celebrar contratos para comprar los CEF y los Bonos PR, y para obtener líneas de préstamos de crédito o margen para mantener los valores de PR, que sin dicho engaño los Demandantes no habrían celebrado dichos acuerdos. Ver, 31 L.P.R.A. § 3404.[5] El engaño fue grave y da lugar a la nulidad de estos contratos porque sin él los demandantes no habrían comprado los valores de PR, ni obtenido líneas de crédito o préstamos de margen para mantener los valores de PR. Véase, 31 L.P.R.A. § 3408.[6]

62. Debido a que los demandantes no tuvieron nada que ver con la contraprestación ilícita, reclaman aquí los dineros y honorarios que pagaron a HJ Sims por la compra de los CEF y Bonos PR, independientemente de cualquier otra compensación que puedan recibir en este caso.

G.     **SEPTIMA CAUSA DE ACCION: DEMANDA DE DEVOLUCIÓN DE COMISIONES Y HONORARIOS**

---

[5] "Será nulo el consentimiento prestado mediante... engaño."

[6] "Hay dolo cuando con palabras o maquinaciones insidiosas de parte de uno de los contratantes se induce al otro a celebrar un contrato que sin ellas no hubiera hecho.

14

63. Las alegaciones contenidas en los párrafos 1 a 62 se vuelven a alegar e incorporan aquí.

64. 'El interés previo al juicio, como la devolución, impide que un demandado se beneficie de sus violaciones de valores. Los tribunales han reconocido que una evaluación de intereses previos al juicio, como el remedio de devolución, 'tiene por objeto privar a los malhechores de las ganancias que obtuvieron ilegalmente al violar las leyes de valores'". Citas omitidas, *SEC v. Sargent, 329 F.3d 34, 40* (1er Cir. 2003). "La restitución y el interés previo al juicio, si bien ambos apuntan a privar al acusado de ganancias ilícitas, son, no obstante, remedios distintos y los casos los analizan repetidamente por separado, refiriéndose con frecuencia a la amplia discreción de los tribunales de distrito para decidir si otorgar [los]". *Id*., at. 41.

65. Los Demandantes compraron los valores de PR como causa inmediata de la mala conducta ilícita e ilícita del Demandado. HJ Sims ha obtenido ilegalmente ingresos sustanciales de dicha conducta indebida en forma de comisiones, tarifas comerciales, tarifas de administración, en montos que los Demandantes no pueden determinar en este momento. Por tanto, los Demandantes exigen la devolución por parte del Demandado HJ Sims de los referidos ingresos ilícitos, y su reintegro con los intereses devengados desde el día en que fueron pagados.

## IV. PRESCRIPCION

66. Si los estatutos de prescripción aplican a las presentes causas de acción, el estatuto aplicable por incumplimiento de contrato en Puerto Rico es de 15 años.

67. Como se establece en el presente, los Demandantes y HJ Sims celebraron un acuerdo contractual para abrir y mantener cuentas de valores en HJ Sims, para comprar y vender valores en esas cuentas, y para que HJ Sims brinde asesoramiento sobre esas cuentas como fiduciarios. El "Acuerdo de relación con el cliente" requería específicamente que HJ Sims hiciera recomendaciones "adecuadas" y cumpliera con las reglas, regulaciones y costumbres y usos de la bolsa o mercado en el que se ejecutan las transacciones de valores. Dado que HJ Sims mismo ejecutó todas las operaciones CEF, entonces era el "intercambio" o "mercado".

68. HJ Sims está obligado por contrato a seguir las reglas de FINRA. Por lo tanto, las Reglas de FINRA regían al Demandado y al mercado, y una violación de esas Reglas por parte de HJ Sims constituía un incumplimiento del contrato con el Sr. y la Sra. Rivero.

69. Además, de conformidad con las reglamentaciones de Puerto Rico que rigen a HJ Sims cuando actúa en Puerto Rico, HJ Sims y sus agentes estaban obligados a actuar como

15

fiduciarios con respecto a sus clientes, como los Demandantes. "Artículo 25 del Reglamento de la Ley Uniforme de Valores."

70. Estas acciones por incumplimiento de contrato están sujetas a un estatuto de limitaciones de 15 años bajo 31 L.P.R.A. §5294 ("las que sean personales y para las que no se fije plazo especial de prescripción, a los quince (15) años.") Ver Colon v. Blades, 914 F. Supp.2d 181 (D. Puerto Rico 2011) ("Sin embargo, el artículo 1802 y su plazo de prescripción de un año no regulan las acciones por incumplimiento de una obligación ya existente... Tales acciones están sujetas a la prescripción general de quince años... La ley de Puerto Rico ha reconocido tales obligaciones preexistentes en, entre otras, acciones contra un agente por ganancias obtenidas en incumplimiento del deber fiduciario...").

71. En consecuencia, el incumplimiento de HJ Sims de su contrato y las Reglas FINRA (y la negligencia asociada y el incumplimiento del deber fiduciario) están sujetos a un estatuto de limitación de 15 años.

## V. DAÑOS

73. Los Demandantes se declaran en contra de las infracciones y violaciones generalizadas del demandado de: Reglamento 6078 de la Ley Uniforme de Valores de Puerto Rico ("PRUSA") que impone que el demandado "debe observar el más alto estándar de deber fiduciario hacia sus clientes e inversionistas"; FR 2010 que impone que HJ Sims observará altos estándares de honor comercial y principios justos y equitativos de comercio; FR 2111, régla de "adecuación", y su regla corolaria FR 2090, "regla de conocer a su cliente"; FR 3110 que impone al demandado el deber de supervisión de establecer y mantener un sistema para supervisar que esté razonablemente diseñado para lograr el cumplimiento de las leyes y regulaciones de valores aplicables y las Reglas FINRA; FR 3120 que impone al demandado un deber de supervisión para establecer, mantener y hacer cumplir un sistema de políticas y procedimientos de control de supervisión que pruebe y verifique que los procedimientos de supervisión del miembro estén razonablemente diseñados para lograr el cumplimiento de las leyes y regulaciones de valores aplicables y las Reglas FINRA; las pautas de FINRA y los estándares de la industria con respecto a los deberes fiduciarios, tratos justos, deberes de cuidado y franqueza, concentración y asignación de activos; las leyes de Puerto Rico por dolo, declaraciones falsas y omisión de hechos materiales, culpa y negligencia en la contravención y en el cumplimiento de las obligaciones contractuales.

16

74. Entre otras cosas, se alega que HJ Sims recomendó una estrategia sin explicar sus riesgos y mucho menos, sin monitorear que las condiciones de dicha estrategia se deterioraran, haciendo la misma una no adecuada para los demandantes, con la intención de vender Bonos de Puerto Rico ("Bonos de PR") y acciones de Fondos Cerrados de PR ("CEF") (conjuntamente denominados "PR valores") para obtener beneficios sustanciales por cuenta y riesgo indebidos de los demandantes.

75. Como parte de la estrategia recomendada, HJ Sims entró en el uso de un alto porcentaje de apalancamiento de los activos de los demandantes para la compra y venta de más valores, inclusive hasta por el uso de estrategias altamente especulativas e inadecuadas, junto a mayor acumulación de valores de Puerto Rico con riego a un impago inminente, mala comercialización generalizada y la recomendación explícita de la estrategia de inversión inadecuada para la compra y mantenimiento de una cartera fuertemente concentrada en las acciones de los Fondos Cerrados por parte de los demandantes que solo querían una inversión segura de renta fija. HJ Sims hizo la falsa representación de que las acciones eran Bonos de PR garantizados por el Gobierno de PR. HJ Sims omitió información a los demandantes sobre los riesgos creados por el alto apalancamiento de los CEF, concentración en los Bonos de PR, precios y demanda de mercado artificiales, e iliquidez por exceso de oferta, saturación del mercado y limitación del mercado a residentes de PR ("CEFs' Concomitant Risks").

76. En cumplimiento del Esquema, bajo las falsas promesas y pretextos antes mencionados, y a través de la omisión de los hechos materiales mencionados anteriormente, los asesores financieros del Demandado recomendaron explícitamente a los demandantes mantener y continuar manteniendo estos valores de Puerto Rico que estaban a punto de dejar de pagar intereses y fue esta conducta en contra de los mejores intereses de sus clientes, los aquí demandantes, la causa inmediata de sus pérdidas.

77. El Demandado HJ Sims incumplió su deber fiduciario con los Demandantes en virtud de la Ley de PR al colocar su propio interés económico sobre el de sus clientes, a su riesgo y cargo, lo que le provocó pérdidas sustanciales en sus inversiones de capital.

78. Por lo cual, muy respetuosamente, los Demandantes son acreedores a que este Honorable Tribunal ordene una indemnización adicional bajo el Artículo 1538 del Código Civil de Puerto Rico 2020 de manera punitiva equivalente al 100% de daños y compensación.

**POR TODO LO CUAL**, muy respetuosamente se solicita a este Honorable Tribunal que luego del trámite legal correspondiente declare **CON LUGAR** la presente demanda, teniendo como consecuencia ordenar al demandado pagar a la parte demandante sus daños por una suma no menor de **$1,400,000** correspondiente a todas las pérdidas capitales incurridas por los Demandantes, así como una suma considerable correspondiente a honorarios de abogado dado el proceder temerario de dicha parte en cuanto a la reclamación del demandante y sus valores y una suma por daos punitivos igual a aquella suma por daos compensatorios de alrededor de $1,400,000.

En San Juan, Puerto Rico, a 07 de septiembre de 2023.

ESPADA, MIÑANA & PEDROSA, LAW OFFICES PSC
AVE. DOMENECH 122 (ALTOS)
SAN JUAN, PR 00918
TEL. (787)758-1999
CEL. (787)402-2226
EMAIL: minanalaw@yahoo.com

f/ *Luis E. Miñana Rodríguez*
POR: LCDO. LUIS E. MIÑANA RODRÍGUEZ, RUA 16297
**Abogados de los Demandantes**

18